UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MIKE CENTENO,

              Plaintiff,

              -against-                             **COMPLAINT**

EXTELL MANAGEMENT CORP., EXTELL
DEVELOPMENT COMPANY, DAVID CORDOVA,
ANN GEORGE, RAIZY HAAS and JOHN/JANE DOE 1-5:   **JURY TRIAL DEMANDED**
              Defendants.
------------------------------------------------------------------X

Plaintiff Mike Centeno ("Mr. Centeno"), by and through his attorneys, Brustein Law, PLLC, brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, New York Executive Law § 296 (the "NYSHRL"), the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107 *et seq.* (the "NYCHRL"), and the New York City Rules and Regulations (the "NYCRR"), to redress his civil and legal rights, and alleges as follows:

    1.    Mr. Centeno was a victim of domestic violence. After Mr. Centeno informed employees of Extell Management Corp. ("Extell") that he had been stabbed, Mr. Centeno was suspended until he could provide proof that he was the actual victim. Plaintiff and his 7-month-old baby were excluded from their home and thrown to the street. Plaintiff provided the contact information for the prosecutor handling his case and also advised them that two orders of protection had been issued against his wife on behalf of him and his 7-month old baby. Plaintiff's attorney, then contacted Extell and advised them that plaintiff was the victim and had been improperly suspended and should be permitted to return to work.

2. Two days after Mr. Centeno's attorney complained about the discrimination and attempted to protect Mr. Centeno's civil rights, Extell terminated Mr. Centeno's employment and permanently evicted him and his 7-month-old baby from their home.  Extell had no legitimate basis for terminating Mr. Centeno's employment and it was retaliatory.

3. Mr. Centeno had never before been reprimanded or received any negative evaluations.

4. Nevertheless, Mr. Centeno was terminated and his career unraveled, shortly after he informed Extell that he had been the victim of domestic violence in violation of federal and state anti-gender and state anti-domestic violence victim discrimination laws – and in retaliation for that complaint as well as for his and his baby's unlawful eviction.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII, NYSHRL, the NYCHRL, NYCRR §26-521

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343, this being an action seeking redress for the violation of Plaintiff's rights under Title VII.

7. Venue in this District is proper under 28 U.S.C. §§1343(3) and 1391(b) in that a substantial part of the events giving rise to this claim occurred in New York County, a county within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

8. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

9. At all relevant times, Plaintiff Mike Centeno (hereinafter "Plaintiff") is a United States citizen and at all relevant times a resident of the State of New York and the City of New York. At all relevant times, Mr. Centeno worked as the resident manager for One Manhattan Square ("OMS").

10. Defendant, EXTELL MANAGEMENT CORP. ("Extell Management") was and is a corporation duly organized and existing under and by virtue of the laws of the State of New York and headquartered at 805 3rd Avenue, New York, New York 10022.

11. Defendant EXTELL DEVELOPMENT COMPANY ("Extell") is, upon information and belief, a foreign business corporation, formed in Delaware and authorized to do business in New York.

12. Extell has oversight and control over Extell Management.

13. Defendant DAVID CORDOVA ("Cordova"), is a Vice President of Property Management for Extell, and was acting within the scope of his employment at the time of the incident in question. Cordova is sued individually and in his official capacity.

14. Defendant ANN GEORGE ("George"), is the Director of Human Resources for Extell, and was acting within the scope of her employment at the time of the incident in question. George is sued individually and in her official capacity.

15. Defendant RAIZY HAAS ("Haas"), is the Senior Vice President for Project Management and Development for Extell, and was acting within the scope of her employment at the time of the incident in question. Haas is sued individually and in her official capacity.

16. Defendant JOHN/JANE DOES 1-5, are employed by Extell Management and Extell, and were acting within the scope of their employment at the time of the incident in question. John/Jane Does 1-5 are sued individually and in their official capacities.

17.     Plaintiff filed a timely charge of discrimination, arising out of the facts described herein, with the Equal Employment Opportunity Commission (EEOC).  The EEOC issued a Notice of Right to Sue dated July 7, 2019.  Plaintiff commenced this action within 90 days of his receipt of the notice of right to sue.

## FACTS

18.     OMS is worth over one billion dollars.

19.     OMS has over 100,000 square feet of indoor and outdoor amenities, as well as 817 luxury condominiums.

20.     OMS is one of Extell's premier buildings, which only opened to residents in 2019.

21.     OMS is owned and operated by Extell and Extell Management.

22.     On January 2, 2019, Extell and Extell Management hired plaintiff as the resident manager for OMS.

23.     Prior to being hired as the resident manager at OMS, plaintiff had worked in the field of building management for over 20 years.

24.     Prior to opening OMS, plaintiff had opened seven other class A residential multi-family luxury buildings.

25.     Plaintiff has FDNY issued certificates for S95, S94, S12, S13, S14, C98, P98, S93, and F97.

26.     Plaintiff also has a license as an HVAC/R technician, which is an internationally recognized license for repairing heating, ventilation air-conditioning, and refrigeration systems.

27.     Plaintiff is a licensed real estate salesperson.

28.     Plaintiff is a LEED Associate, which he was designated after passing the United States Green Building Council's test.

29. As a LEED Associate, plaintiff is knowledgeable about the appropriate testing and curative measures needed for building construction as well as understanding how building can be in compliance with Local Law 83 and Local Law 84.

30. In addition to these certifications, plaintiff also has dozens of other building trade certifications, including in the fields of OSHA, lead and asbestos remediation supervisor, plumbing, electricity, carpentry, and rooftop units.

31. Plaintiff's duties and responsibilities as the resident manager was to assist in identifying potential staff and hiring the building's employees, manage the team of employees for OMS, and assist the management team with opening OMS, as well as the overall management of OMS.

32. Plaintiff's salary as resident manager included $175,000 plus a bonus worth at least $20,000 to $45,000.

33. Plaintiff's benefits included free parking, medical benefits for plaintiff and his family, utilities, as well as a 2-bedroom, 2-bathroom apartment in OMS.

34. The 2-bedroom, 2-bathroom apartment in OMS, which plaintiff resided in was worth approximately $7,495/month.

35. The rent for a similar 2-bedroom, 2-bathroom apartment in OMS is approximately $7,495/month.

36. On or about January 2, 2019, plaintiff moved into OMS with his wife and infant son.

37. Plaintiff immediately began assembling a staff for OMS and managing the building.

38. On April 4, 2019, OMS had a broker event, which was attended by the owner of Extell, Gary Barnett.

39. Plaintiff had planned the event for weeks with Ally Walker ("Walker"), his direct supervisor, the design team, and the sales team.

40. After the event, Cordova told plaintiff that he had done a "kick ass job!"

41. In the beginning of April 2019, plaintiff's 90-day period of probation ended.

42. At the conclusion of plaintiff's probation period, plaintiff met with Walker and discussed his performance.

43. During his performance evaluation, Walker had no complaints about plaintiff's job.

44. During the performance evaluation, Walker told plaintiff the following:

   a. plaintiff was doing an exceptional job.

   b. Walker was relying on plaintiff because this was her first building opening and property management.

   c. plaintiff knew exactly what to do

   d. Walker relied on plaintiff to handle coordinating with mail delivery, sanitation and assembling the professional staff.

   e. The staff assembled plaintiff was excellent with many years of experience.

   f. Plaintiff did not need to be supervised.

   g. plaintiff should continue kicking ass.

   h. The building needs to continue to shine above every other building in Extell's portfolio so that Walker and plaintiff

45. Walker told plaintiff that if he kept up the good work, plaintiff would have an excellent chance to hired by Extell as resident manager to open One Central Park Tower, on Billionaires Row.

46. The resident manager position at One Central Park Tower is more prestigious than

the resident manager position at OMS.

47. On Thursday, April 18, 2019, plaintiff was stabbed in the leg by his wife in his apartment at OMS.

48. Plaintiff immediately called the police and reported the crime.

49. Police responded to plaintiff's 9-1-1 call.

50. There were no allegations that plaintiff had used any physical force or threatened the use any physical force.

51. Plaintiff was transported to the hospital for his wound.

52. Plaintiff's wife was placed in handcuffs by the police and arrested for assault with a deadly weapon, endangering the welfare of a child, as well as violating a previous order of protection.

53. Outside of Mr. Centeno's immediate family, no residents of OMS had any knowledge of this incident.

54. Plaintiff's wife was arraigned and a second order of protection was issued against her in favor of plaintiff and their 7-month old baby.

55. On Friday, April 19, 2019, plaintiff reported to his office in OMS on time for work.

56. On April 19, 2019, plaintiff informed Walker that he had been the victim of domestic violence and that he had been stabbed in the leg.

57. Plaintiff was walking with a noticeable limp.

58. Walker told plaintiff to take the rest of the day off to rest.

59. April 19, 2019 was Good Friday, so plaintiff went to church with his infant son and his parents.

60. A few hours later, Walker told plaintiff to return to the building to meet with her.

61. Plaintiff met with Walker and Cordova at OMS.

62. Plaintiff was suspended from his job.

63. Cordova told plaintiff that they had spoken with Human Resources and Human Resources wanted plaintiff to leave the building until he could provide documentation as to what had happened the day before.

64. Plaintiff told Cordova that he had been stabbed in the leg by his wife and that he was the victim.

65. Walker told plaintiff that she and Cordova did not think that plaintiff had done anything wrong.

66. Plaintiff told Cordova that he was being treated differently because he was a man.

67. Plaintiff told Cordova that if he had been a woman who was stabbed by her spouse and had a baby to care for, they would not have thrown him and his baby to the street.

68. Plaintiff told them that he had an order of protection against his wife and it was unfair that he was being suspended and kicked out of his home.

69. Plaintiff asked Cordova where he and his 7-month-old baby were supposed to stay if he could not return to his home.

70. Cordova told plaintiff that maybe he could move in with his mother.

71. Plaintiff then left the building without being able to access clothing, diapers, formula, or other essentials for his infant son.

72. After being suspended from his employment, plaintiff retained an attorney.

73. On Monday, April 22, 2019, plaintiff emailed Cordova, Walker, and George. Plaintiff told them that he was the victim of domestic violence and that he had spent the entire day meeting with the prosecutor, and the Administration for Children Services in Family Court.

74. Plaintiff reiterated that he had not been arrested and no charges had been filed against him.

75. Plaintiff told Cordova, Walker, and George that he was being treated differently because he was a man.

76. Plaintiff provided the name of the prosecutor handling the case against his wife so that they could verify that he was the victim of domestic violence.

77. Plaintiff also provided them with contact information for his attorney.

78. Neither Cordova, Walker, nor George responded to plaintiff's email.

79. On Tuesday, April 23, 2019, plaintiff's attorney emailed George and advised her that plaintiff was improperly suspended because he was the victim and he asked for a basis for the suspension. Plaintiff's attorney further requested that plaintiff be permitted to return to work immediately.

80. On Thursday, April 25, 2019, Ahuva Genack ("Genack"), the General Counsel for Extell, contacted plaintiff's attorney and advised him that plaintiff was being terminated effective April 25, 2019.

81. Prior to April 25, 2019, there had been no documented complaints about plaintiff's job performance.

82. Prior to April 25, 2019, no one had ever complained about plaintiff's job performance.

83. On or about April 25, 2019, plaintiff and his 7-month old infant were wrongfully evicted from his home.

84. Neither Extell, Extell Management, nor any of their employees or agents had sought legal process to remove plaintiff and his 7-month-old infant from their home.

85. On or about April 30, 2019, Cordova held a staff meeting with Walker and the employees of OMS.

86. During the meeting, Cordova told the staff of OMS that OMS was a flagship development, not just for Extell, but for all of New York.

87. Cordova told the staff that the Extell name helped the building reputation.

88. Cordova told the staff that Extell had recruited and hired who they believe are the best in the industry in New York.

89. During the meeting it was discussed how none of the building's residents had had any complaints and they were all happy.

90. During the meeting, Cordova had nothing but praise for plaintiff.

91. Cordova told the staff that:

    a. plaintiff had brought all of them in to work at OMS.

    b. everyone including plaintiff had high recommendations.

    c. plaintiff was very seasoned,

    d. plaintiff was very experienced opening buildings

    e. plaintiff had everything going for him.

    f. plaintiff was doing a great job.

    g. the staff had come with plaintiff and they were a great staff

    h. Extell wanted them at OMS.

92. After plaintiff was terminated, Walker also said that plaintiff had been doing a great job.

93. Walker said that plaintiff was very experienced and she would have kept plaintiff as the resident manager if it had been her decision.

94. Walker said that Haas had pressured Cordova and Walker to fire plaintiff.

95. Plaintiff has been left financially and emotionally devastated by his termination and brings this action to vindicate his rights.

## CAUSES OF ACTION

### COUNT I

### Gender Discrimination Claim Under Title VII

96. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

97. Plaintiff is a member of a protected class based upon his male gender.

98. Plaintiff was and continues to be qualified to be the resident manager of OMS.

99. Plaintiff was suspended as resident manager, which constitutes an adverse employment action.

100. Plaintiff was terminated as resident manager, which constitutes an adverse employment action.

101. After reporting to Defendant Cordova that he had been stabbed by his wife and was the victim of domestic violence, plaintiff was required to bring documentation corroborating that he was the victim of domestic violence despite walking with a noticeable limp.

102. After plaintiff complained to Defendants that he was being discriminated against based upon his gender, plaintiff and his infant child were excluded from their home and ultimately terminated.

103. Had plaintiff been a female, Defendants would not have suspended plaintiff for being stabbed by his spouse.

104. Had plaintiff been a female, Defendants would not have excluded plaintiff and his 7-month-old infant from their home where he would have been protected by the building's security.

105. As a consequence, thereof, plaintiff has been injured.

## COUNT II

### Employment Discrimination Under the NYSHRL and NYCHRL

106. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

107. Plaintiff is a member of a protected class based upon his male gender and his status as a victim of domestic violence.

108. Plaintiff was and continues to be qualified to be the resident manager of OMS.

109. Plaintiff was suspended as resident manager, which constitutes an adverse employment action.

110. Plaintiff was terminated as resident manager, which constitutes an adverse employment action.

111. After reporting to Defendant Cordova that he had been stabbed in the leg by his wife and was the victim of domestic violence, plaintiff was required to bring documentation corroborating that he was the victim of domestic violence despite walking with a noticeable limp.

112. Despite providing the contact information for the Assistant District Attorney who could verify that plaintiff was the victim of domestic violence, plaintiff was suspended from his job and ultimately terminated.

113. Plaintiff was suspended from his employment as a result of identifying himself as

a victim of domestic violence.

114. Plaintiff was terminated from his job after providing corroboration for his status as a victim of domestic violence.

115. As a consequence, thereof, plaintiff has been injured.

## COUNT III
### Retaliation Claim Under Title VII, NYSHRL, and NYCHRL
### (Against All Defendants)

116. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

117. After being wrongfully suspended from his job after identifying himself as a victim of domestic violence, and complaining to Defendants that he was being discriminated against based upon his gender, plaintiff retained an attorney to protect his rights.

118. Plaintiff's hiring an attorney to oppose the defendants' illegal discrimination was protected activity.

119. After plaintiff's attorney contacted defendant George and advised her that plaintiff had been improperly suspended, defendants retaliated against plaintiff by terminating his employment.

120. As a consequence, thereof, plaintiff has been injured.

## COUNT IV
### Housing Discrimination Under NYCHRL
### (Against All Defendants)

121. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

122. Plaintiff had resided in OMS with his wife and infant son since January 2, 2019.

123. Prior to his advising defendants that he had been the victim of domestic violence, no issues with plaintiff's residing in OMS had ever been raised.

124. As a domestic violence victim, plaintiff was a member of a protected class.

125. After plaintiff informed defendants that he was a domestic violence victim, defendants improperly excluded plaintiff and his infant son from their apartment in OMS.

126. After plaintiff informed defendants that he was a domestic violence victim, defendants improperly evicted plaintiff and his infant son from OMS.

127. As a consequence, thereof, plaintiff has been injured.

**COUNT V**
**Unlawful Eviction Under NYCRR §26-521**
**(Against All Defendants)**

128. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

129. Plaintiff had resided in OMS with his infant son since January 2, 2019 for more than 30 consecutive days.

130. Prior to his advising defendants that he had been the victim of domestic violence, no issues with plaintiff's residing in OMS had ever been raised.

131. As a domestic violence victim, plaintiff was a member of a protected class.

132. After plaintiff informed defendants that he was a domestic violence victim, defendants improperly excluded plaintiff and his infant son from their apartment in OMS.

133. Defendants excluded plaintiff and his infant son from their home in OMS without legal process.

134. Plaintiff was fearful that defendants would terminate his employment if he disobeyed their exclusion from his home.

135. Despite a legal right to remain in their home in OMS, plaintiff and his infant son were excluded from their home by defendants.

136. As a consequence, thereof, plaintiff has been injured.

## PRAYER FOR RELIEF

WHEREFORE, it is respectfully requested that the Court award:

(a) Compensatory damages, including damages for emotional distress and mental anguish, in favor of Plaintiff in an amount to be determined at trial;

(b) Treble damages in favor of Plaintiff for his wrongful eviction;

(c) Punitive damages in favor of Plaintiff in an amount to be determined at trial;

(d) Costs, interest, and attorneys' fees; and

(e) Such other and further relief as this Court may deem just and proper.

DATED:  August 2, 2019
        New York, New York

                                        BRUSTEIN LAW, PLLC

                                        _____/s/_____
                                        Evan Brustein
                                        299 Broadway, 17th Floor
                                        New York, NY 10007
                                        (212) 233-3900

                                        *Attorney for Plaintiff*